IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ORCHARD YARN AND THREAD          )
COMPANY INC.,                    )
                                 )
            Plaintiff,           )
                                 )
      v.                         )    C.A. No. 24-805 (GBW)
                                 )
LAST BRAND, INC.,                )
                                 )
            Defendant.           )


**OPENING BRIEF IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) OR 28 U.S.C. § 1367(c)</u>**


<div style="display:flex">
<div>

OF COUNSEL:

Zachary M. Briers
Adam W. Kwon
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
(213) 683-9100

October 31, 2024

</div>
<div>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE   19899-1347
(302) 658-9200
began@morrisnichols.com

*Attorneys for Defendant*

</div>
</div>

TABLE OF CONTENTS

Page

I.      NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

II.     SUMMARY OF ARGUMENT ........................................................................................2

III.    STATEMENT OF FACTS ...............................................................................................3

IV.     LEGAL STANDARD.......................................................................................................4

V.      ARGUMENT ....................................................................................................................4

        A.      The Court Should Dismiss Count IV of the FAC Pursuant to
                Rule 12(b)(6)........................................................................................................4

                1.      Plaintiff's Allegation of Niche Recognition Is Insufficient to State
                        a Claim for Dilution. ..............................................................................5

                2.      Plaintiff's Allegation That the Asserted Mark Is "Arbitrary" Is
                        Insufficient to State a Claim for Dilution. ............................................8

        B.      Alternatively, the Court Should Decline to Exercise Supplemental
                Jurisdiction Over Count IV, Which Presents Novel and Complex Issues of
                State Law. ...........................................................................................................11

VI.     CONCLUSION................................................................................................................12

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aero AG Holdings, LLC v. Huggoes Fashion LLC*,
  2022 WL 6244439 (S.D.N.Y. July 5, 2022) ...................................................6, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................4

*Bos. Granite Exch., Inc. v. Greater Bos. Granite, LLC*,
  2012 WL 3776449 (D. Mass. Aug. 29, 2012) ...............................................6

*Componentone, L.L.C. v. Componentart, Inc.*,
  2007 WL 4302108 (W.D. Pa. Dec. 6, 2007)................................................5, 6

*Dille Fam. Tr. v. Nowlan Fam. Tr.*,
  276 F. Supp. 3d 412 (E.D. Pa. 2017) ...........................................................5

*Figueroa v. Buccaneer Hotel, Inc.*,
  188 F.3d 172 (3d Cir. 1999)..........................................................................12

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
  930 F.2d 277 (3d Cir. 1991)............................................................................9

*Grayson v. Mayview State Hosp.*,
  293 F.3d 103 (3d Cir. 2002)..........................................................................11

*HomeVestors of Am., Inc. v. Warner Bros. Discovery, Inc.*,
  2023 WL 6880341 (D. Del. Oct. 18, 2023) ...............................................5, 12

*Kibler v. Hall*,
  843 F.3d 1068 (6th Cir. 2016) ........................................................................9

*Lingo v. Lingo*,
  785 F. Supp. 2d 443 (D. Del. 2011)................................................................5

*McDerby v. Daniels*,
  2010 WL 2403033 (D. Del. June 16, 2010)..................................................12

*Morse v. Lower Merion Sch. Dist.*,
  132 F.3d 902 (3d Cir. 1997)............................................................................4

*Nami v. Fauver*,
  82 F.3d 63 (3d Cir. 1996) ...............................................................................4

*Santora v. Red Clay Consol. Sch. Dist.*,
    901 F. Supp. 2d 482 (D. Del. 2012)........................................................12

*Savin Corp. v. Savin Grp.*,
    391 F.3d 439 (2d Cir. 2004)..................................................................8

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
    113 F.3d 405 (3d Cir. 1997)..................................................................4

*Spark Therapeutics, Inc. v. Bluebird Bio, Inc.*,
    2022 WL 605724 (D. Del. Jan. 25, 2022)................................... 2, passim

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)......................................................................8, 10

STATUTES

Delaware Anti-Dilution Statute
    6 Del. C. § 3313 ............................................................. 4, passim

28 U.S.C. § 1367(a) .....................................................................11

28 U.S.C. § 1367(c)(1), (c)(3)...............................................11, 12, 13

FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(6)...............................................................................1, 4, 12

OTHER AUTHORITIES

J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition
    (5th ed. 2024)................................................................. 2, passim

Restatement (Third) of Unfair Competition .................................2, 5, 6, 10

I.    **NATURE AND STAGE OF THE PROCEEDINGS**

Defendant operates the website Quince.com, where it sells "essentials," including home goods and apparel with simple designs. Since its launch in June 2020, Quince.com has become one of the most heralded e-commerce retailers. It was named by Business Insider and Forbes Magazine as one of the best digital brands of 2022, and its products have been recommended by dozens of news sources, including the New York Times, Wall Street Journal, Vogue, and Good Morning America. Over the past four years, millions of consumers have purchased products on Quince.com. Quince.com does not sell yarn.

In contrast, Plaintiff sells various types of yarn, primarily under the name "Lion Brand Yarn Company." In June 2023—three years after Quince.com launched—Plaintiff acquired a smaller yarn company, which sells yarn under the name "QUINCE&CO." (the "Asserted Mark"). As a result of the acquisition, Plaintiff alleges it became the legal owner of the Asserted Mark.

On July 10, 2024, Plaintiff filed this lawsuit, alleging claims of trademark infringement, trademark dilution and unfair competition. Defendant moved to dismiss Count III (federal trademark dilution), Count IV (common law unfair competition), and Count VI (trademark dilution under Delaware state law) of Plaintiff's initial complaint. *See* Def.'s First Mot. Dismiss (D.I. 12). In particular, Defendant argued that Plaintiff failed to allege facts to support an inference that the Asserted Mark is sufficiently famous, which is an essential element of any dilution claim. *See* Opening Brief in Support of Def.'s First Mot. Dismiss at 4–8 (D.I. 13).

Rather than opposing Defendant's motion, Plaintiff filed the First Amended Complaint ("FAC") (D.I. 15). The FAC no longer asserts any claim for federal trademark dilution or common law unfair competition. The FAC does reallege a claim for trademark dilution under Delaware state law, but it does not rectify the legal deficiencies that Defendant identified in its previous motion. Accordingly, Defendant now moves to dismiss Count IV of the FAC pursuant to Rule 12(b)(6) or, alternatively, pursuant to 28 U.S.C. § 1367(c).

## II.    SUMMARY OF ARGUMENT

Count IV of the FAC should be dismissed because Plaintiff does not allege any facts to support an inference that the Asserted Mark is sufficiently "distinctive"—i.e., well-known among the general consuming public—which is an essential element of trademark dilution. The sparse allegations in the FAC fail to establish this element for two independent reasons.

***First***, Plaintiff once again alleges only that its mark is "well known among the relevant consuming public ***for high quality yarns***." FAC ¶ 17 (emphasis added). But notoriety within a niche market, such as "high quality yarns," is insufficient to support a claim for trademark dilution. To establish a claim, Plaintiff must allege widespread recognition among the general public. *See* Restatement (Third) of Unfair Competition § 25 cmt. e (Am. L. Inst. 1995) ("A mark that evokes an association with a specific source only when used in connection with the particular goods or services that it identifies is ordinarily not sufficiently distinctive to be protected against dilution."). Because Plaintiff alleges only that its mark has gained recognition in a niche market, its claim for dilution must be dismissed.

***Second***, Plaintiff alleges, for the first time, that the Asserted Mark is "inherently distinctive" because it is an "arbitrary" name for selling yarn. Even if that were true, it is immaterial. The word "distinctive" is "capable of different meanings" within trademark law. *See* McCarthy, J. Thomas, McCarthy on Trademarks & Unfair Competition ("*McCarthy*") § 24:87 (5th ed. 2024). Plaintiff appears to conflate the basic "distinctiveness" required for trademark protection (i.e., the capacity of a mark to serve as a source identifier) with the heightened "distinctiveness" required to state a claim for dilution. This conflation is wrong. *See* Restatement (Third) of Unfair Competition § 25 cmt. e ("In applying the antidilution statutes, most courts require that the mark possess a degree of distinctiveness beyond that needed for the designation to qualify as a valid trademark."); *Spark Therapeutics, Inc. v. Bluebird Bio, Inc.*, 2022 WL 605724, at *14, n.12 (D. Del. Jan. 25, 2022) (expressing strong doubt that inherent distinctiveness alone

can warrant dilution protection).  "Without a requirement that the plaintiff's mark be very strong or famous, an antidilution statute becomes a rogue law that turns every trademark, no matter how weak, into an anti-competitive weapon, sweeping up all uses of the mark in every line of business." *McCarthy* § 24:87.  Such would be the case here if Plaintiff is permitted to maintain its dilution claim as alleged.  Plaintiff does not allege that its mark has widespread recognition among the general public.  Thus, the FAC fails as a matter of law to state a claim for dilution, and Count IV should be dismissed.

Alternatively, the Court should decline to exercise supplemental jurisdiction over Count IV of the FAC, because it presents novel and complex issues of state law on which no Delaware court has opined, and Plaintiff no longer alleges any corresponding federal dilution claim.

## III.    STATEMENT OF FACTS

Defendant operates an online retail business at Quince.com, where it sells high-quality, affordable "essentials" under the trademark "QUINCE".  Defendant primarily sells apparel, accessories, and housewares with simple designs and minimal branding.  Since its launch in 2020, Quince has become one of the most acclaimed e-commerce retailers.

Plaintiff makes yarn primarily under the name "Lion Brand Yarn Company."  In June 2023, Plaintiff acquired a smaller yarn company, which owned U.S. Trademark Registration No. 6,734,957 (the "'957 Registration") for the mark "QUINCE&CO." when used in connection with the sale of yarn and knitting patterns.  *See* FAC ¶¶ 11, 14, Ex. 1 (D.I. 15-1).  As a result of the acquisition, Plaintiff alleges it became the legal owner of the '957 Registration.

In the FAC, Plaintiff again contends that its recently acquired trademark registration is "well known among the relevant consuming public for high quality yarns, patterns for using its yarns . . . and other items that can and are created by knitting and crocheting."  FAC ¶ 17.[1]  In

---

[1] Whereas Plaintiff previously alleged in conclusory fashion that the Asserted Mark is "famous and distinctive," *see* Compl. ¶¶ 54, 56 (D.I. 1), it notably omits those allegations from the FAC.

addition, Plaintiff now alleges that the Asserted Mark is "arbitrary" and, therefore, "inherently distinctive." *Id.* ¶ 61. Without any additional pleaded facts, Plaintiff asserts a claim of trademark dilution under Delaware's anti-dilution law, 6 Del. C. § 3313. *See id.* ¶¶ 60–64.

## IV.    LEGAL STANDARD

A district court must dismiss a cause of action if the complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must allege *facts* sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court need not accept as true "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## V.    ARGUMENT

### A.    The Court Should Dismiss Count IV of the FAC Pursuant to Rule 12(b)(6).

Plaintiff fails to state a claim under Delaware's anti-dilution statute, which as a threshold matter requires a plaintiff to establish that its mark is "distinctive" enough to warrant protection against dilution. *See* 6 Del. C. § 3313 (affording protection against "dilution of the distinctive quality of a mark"); *Spark Therapeutics*, 2022 WL 605724, at *14 (acknowledging that a claim for dilution "requires that plaintiff's mark possess a distinctive quality capable of dilution" (citations omitted)). This is akin to the requirement under federal dilution law that a mark cannot be diluted unless it is "famous." *See* Opening Brief in Support of Def.'s First Mot. Dismiss 4–8. In the FAC, Plaintiff appears to attempt to plead the requisite distinctiveness by alleging that (1) its mark has become well-known among the niche market of high-quality yarn (FAC ¶ 17); and (2) its

mark is inherently distinctive because its name is "arbitrary" when used for yarn products (FAC ¶ 61). As explained below, both theories fail as a matter of law.

### 1.    Plaintiff's Allegation of Niche Recognition Is Insufficient to State a Claim for Dilution.

No court has ever addressed whether, under Delaware's anti-dilution law, recognition in a niche market is sufficient to warrant a cause of action. Nonetheless, the overwhelming consensus among legal authorities—including the federal trademark dilution standard, cases from other courts analyzing other states' anti-dilution statutes that are similar to Delaware's statute, the Restatement (Third) of Unfair Competition, and scholarship from leading academics—demonstrates that any Delaware dilution claim premised on a theory of niche fame or distinctiveness is legally deficient.

To start, at least one court in this District has adjudicated a Delaware dilution claim under the same standard that applies to federal dilution claims, acknowledging that "case law regarding 6 Del. C. § 3313 is 'sparse.'" *HomeVestors of Am., Inc. v. Warner Bros. Discovery, Inc.*, 2023 WL 6880341, at *6 (D. Del. Oct. 18, 2023) (Andrews, J.). And there is no question under federal law that fame which is limited to a niche market is inadequate to maintain a dilution claim. *See* Opening Brief in Support of Def.'s First Mot. Dismiss 4–6; *see also, e.g.*, *Lingo v. Lingo*, 785 F. Supp. 2d 443, 455 (D. Del. 2011) ("Of particular import is that [the asserted mark] falls short of national fame as contemplated by the Trademark Dilution Revision Act ('TDRA').");  *Dille Fam. Tr. v. Nowlan Fam. Tr.*, 276 F. Supp. 3d 412, 435 (E.D. Pa. 2017) ("[T]he 2006 addition of the definition of a famous mark by the [TDRA] effectively precludes niche fame from serving as a basis for a federal dilution claim." (citations omitted)); *Componentone, L.L.C. v. Componentart, Inc.*, 2007 WL 4302108, at *2–3 (W.D. Pa. Dec. 6, 2007) (agreeing that "Plaintiff's federal dilution claim fails as a matter of law because it depends entirely on the existence of niche market fame, a concept no longer recognized under federal law"); *McCarthy* § 24:104 ("[T]o qualify as 'famous'

under the anti-dilution law, the mark must be a 'household name'—*a name immediately familiar to very nearly everyone, everywhere in the nation*." (emphasis added) (collecting cases)).

Because state anti-dilution statutes (including Delaware's) are modeled after the federal corollary, courts have eliminated "niche" fame or distinctiveness as a viable theory for establishing a dilution claim under state law. *See Componentone*, 2007 WL 4302108, at *3 ("It is important to note that 'niche market fame' does not arise from the specific language of the Pennsylvania statute, but rather is a creature of judicial construction of federal law. . . . [T]o the extent that Pennsylvania courts recognized the concept of niche market fame, they did so based on interpretation of federal law that is no longer applicable."). Indeed, this is true even for state anti-dilution statutes that (like the Delaware statute) protect a "distinctive" mark as opposed to a "famous" mark as articulated under federal law. *See, e.g.*, *id.*; *Bos. Granite Exch., Inc. v. Greater Bos. Granite, LLC*, 2012 WL 3776449, at *5–6 (D. Mass. Aug. 29, 2012) ("The [FTDA] and the Massachusetts Anti-Dilution Statute protect only particularly distinctive and famous marks. . . . The allegations in Plaintiff's Amended Complaint are not enough to imply that Plaintiff's mark is well known to more than a limited segment of the consuming public."); *Aero AG Holdings, LLC v. Huggoes Fashion LLC*, 2022 WL 6244439, at *17–18 (S.D.N.Y. July 5, 2022) ("[T]he standards for establishing the distinctiveness required to show dilution under New York law closely resemble the standards for fame under the Lanham Act. . . . [Plaintiff] has failed to allege sufficiently the 'key ingredient' of fame to support its dilution claim. . . . Rather, [Plaintiff] needed to allege facts supporting the plausible inference that [its] Mark is sufficiently distinctive and famous in the eyes of the general public." (cleaned up)).

The relevant Restatement of Unfair Competition also concludes that recognition in a niche market cannot support a claim under state anti-dilution laws like 6 Del. C. § 3313 that protect "distinctive" trademarks. *See* Restatement (Third) of Unfair Competition § 25 cmt. e ("[A]

trademark is sufficiently distinctive to be diluted by a nonconfusing use *if the mark retains its source significance when encountered outside the context of the goods or services with which the mark is used by the trademark owner*. . . . A mark that evokes an association with a specific source only when used in connection with the particular goods or services that it identifies is ordinarily not sufficiently distinctive to be protected against dilution." (emphasis added)).

As explained by Professor McCarthy, the rationale for precluding dilution claims based on niche notoriety is rooted in fundamental principles of trademark law and the original purpose of the dilution doctrine as a means for protecting only famous, well-known marks for which a traditional likelihood of confusion test is out of the question:

> The use of niche fame is forbidden by the 2006 revisions to federal law. In the author's view, the niche fame theory similarly should not be used under state law. As a matter of public policy, the niche fame concept threatens to deform and displace the traditional likelihood of confusion rule. Acceptance of the theory of niche market fame produces a strange result. The legal theory of antidilution was conceived to protect strong marks against a diluting use by a junior user in a product or service line far removed from that in which the famous mark appears. . . . The assumption is that the traditional likelihood of confusion could not be proven in such cases. Hence, a kind of "extra-special" legal exclusivity was felt necessary to give the owners of strong marks the kind of protection that they "deserve." Thus, using the antidilution law when the parties are selling their products in the same niche market sounds a dissonant and false note. Why the need to invoke the "super weapon" of the antidilution law to resolve what appears to be a garden variety infringement case?

> If the mark is indeed "famous" in its niche market, why would the senior user even need to invoke the special protections afforded by the antidilution law when the accused mark is in use in the same market? As Judge Ellis remarked: "[I]t seems an odd act of statutory interpretation that permits the owner of a famous mark to prevent dilution only by competitors in the owner's niche market, particularly since in such an instance, relief would likely already be available to the mark's owner under a § 43(a) infringement theory." Similarly, Judge Barry, dissenting in the Third Circuit *Sporting News* case said that if it is possible to find a mark "famous" within a niche market, then it is possible to find almost any mark "famous" if one defines its market narrowly enough. If that is so, then every mark is famous and antidilution law "will surely devour infringement law." This is contrary to the purpose and intent of any coherent antidilution law.

7

*McCarthy* § 24:105 (footnotes omitted); *see also id.* § 24:87 ("'Niche fame' to buyers in only one line of business is not sufficient.").

Plaintiff does not attempt to allege that the Asserted Mark has achieved widespread recognition among the general public. Rather, Plaintiff contends that its mark is "well known" only within the exceptionally narrow market "for high quality yarns, patterns for using its yarns . . . and other items that can and are created by knitting and crocheting." FAC ¶ 17. This is a quintessential case of alleged niche fame. Even accepting the allegations as true, Plaintiff's alleged niche recognition among purchasers of specialty yarns and knitting patterns is legally insufficient, and Count IV of the FAC should be dismissed. *See Savin Corp. v. Savin Grp.*, 391 F.3d 439, 450 (2d Cir. 2004) (explaining that when a plaintiff fails to adequately allege ownership of a famous or distinctive mark, early dismissal at the pleading stage is "well advised" because "this will often obviate the costly litigation of potentially much thornier issues").

### 2. Plaintiff's Allegation That the Asserted Mark Is "Arbitrary" Is Insufficient to State a Claim for Dilution.

In an effort to cure its pleading deficiency, Plaintiff included in the FAC a new allegation that the Asserted Mark is "inherently distinctive" because it is an "arbitrary" name for yarn. FAC ¶ 61. Presumably, Plaintiff contends that this alleged arbitrariness satisfies the requirement under 6 Del. C. § 3313 that a mark must be "distinctive" to warrant a claim for dilution. But Plaintiff's attempt to establish this claim element is fundamentally flawed because it improperly conflates two critically different meanings of the term "distinctive." It is true that arbitrary marks, by their nature, are considered "distinctive" because they are not descriptive or suggestive of the goods with which they are associated.[2] But that distinctiveness, referred to as *conceptual* distinctiveness,

---

[2] *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69 (1992) (explaining that suggestive, arbitrary, and fanciful marks are "inherently distinctive" and entitled to protection as trademarks, but generic and descriptive marks "are not inherently distinctive . . . and hence cannot be protected").

does not satisfy the legal requirements necessary to bring a claim for dilution.  The distinctiveness required to bring a Delaware dilution claim refers to a mark's *commercial* distinctiveness, i.e., actual recognition by consumers.  *See McCarthy* § 11:14 ("It is sometimes said that arbitrary . . . marks are automatically 'strong' marks and therefore can be given a wide scope of protection without further analysis.  But this is inaccurate. . . .  Determining the overall 'strength' of a mark requires a two-pronged scrutiny: both the conceptual and commercial strength of the mark must be weighed.").

Plaintiff's allegation that its mark is "inherently distinctive" as an arbitrary name for yarn improperly conflates the baseline threshold for trademark protection (conceptual distinctiveness) with the notoriety required to bring a dilution claim (commercial distinctiveness).  Conceptual distinctiveness represents nothing more than a mark's potential to function as a source identifier. It exists in the abstract, based on a mark's theoretical capacity to distinguish a producer's goods from those of others.  *See Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 n.18 (3d Cir. 1991) (explaining that an arbitrary mark is simply any common word that, when applied to goods, neither describes nor suggests any characteristic of those goods).  Conceptual distinctiveness, therefore, does not require actual consumer recognition of the mark in the marketplace.  Commercial distinctiveness, on the other hand, requires actual notoriety; it "depends on public recognition, the extent to which people associate the mark with the product it announces."  *See Kibler v. Hall*, 843 F.3d 1068, 1074 (6th Cir. 2016) ("[A] mark can be conceptually strong without being commercially strong, and thus weak.").

No Delaware court has squarely decided whether the "distinctive" requirement imposed by Delaware's anti-dilution law could be met by a showing of conceptual distinctiveness alone, absent an additional showing of commercial distinctiveness.  *See Spark Therapeutics*, 2022 WL 605724, at *14 n.12 (distinguishing ostensibly contrary caselaw and observing that no courts have

considered whether conceptual strength alone could warrant protection under 6 Del. C. § 3313).[3]

However, there is consensus among the relevant legal authorities that have considered this issue: a claim for trademark dilution cannot be premised on conceptual distinctiveness alone because a heightened level of distinctiveness based on actual commercial recognition is required. As Judge Bryson summarized:

> [A]t present, the Lanham Act contains a provision addressing dilution, 38 states have anti-dilution statutes, and one state (Ohio) has recognized a cause of action for trademark dilution as a matter of common law. A heightened degree of distinctiveness is expressly required by statute (or, in the case of Ohio, by common law) in all but nine of those states—the nine states that have retained the original language of the 1964 Model Bill. As indicated in the cases cited above, courts in several of the states that have retained the original language of the 1964 Model Bill—Illinois, Massachusetts, Missouri, and New York—have applied a heightened standard for distinctiveness to those states' anti-dilution statutes.

*Spark Therapeutics*, 2022 WL 605724, at *16; *see also* Restatement (Third) of Unfair Competition § 25 cmt. e ("In applying the antidilution statutes, most courts require that the mark possess a degree of distinctiveness beyond that needed for the designation to qualify as a valid trademark."); *McCarthy* § 24:87 (Distinctiveness as a prerequisite to dilution "requires something more than the distinctiveness or strength of an ordinary, run-of-the-mill trademark.").

These legal authorities are premised on sound policy considerations. Permitting the owner of *any* arbitrary trademark to assert a claim for dilution would create "a rogue law that turns every trademark, no matter how weak, into an anti-competitive weapon, sweeping up all uses of the mark in every line of business." *McCarthy* § 24:87. For example, a relatively unknown yarn company could then wrongfully capture a monopoly over its name by asserting dilution claims against any business in the nation, operating in any commercial market, that might happen to use a name that is similar. "[T]his would upset the traditional balance of fair versus free competition that [is]

---

[3] Although Judge Bryson referenced "suggestive" marks by example, the same logic holds true for arbitrary marks because both suggestive and arbitrary marks are considered conceptually "distinctive." *See Two Pesos*, 505 U.S. at 768.

inherent in trademark law. Such an expansion of the antidilution theory would grant every trademark a right 'in gross,' contrary to the most basic concepts of what legal rights of exclusion should exist in a trademark." *Id.* § 24:104 (footnotes omitted).

In sum, Plaintiff alleges that the Asserted Mark is *conceptually* distinctive but does not adequately allege that it is in fact *commercially* distinctive such that it qualifies for dilution protection. Thus, Plaintiff fails to state a claim for dilution, and Count IV should be dismissed.

<p style="text-align:center">*      *      *</p>

Dismissal of Count IV should be with prejudice. Plaintiff already had ample notice of this pleading deficiency *and* an opportunity to attempt to rectify it by way of the FAC. Further leave to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (explaining that leave to amend need not be granted if amendment would be futile); *see also, e.g.*, *Aero*, 2022 WL 6244439, at *18 ("Because [plaintiff] has failed to plausibly allege a sufficient level of public recognition, leave to amend its federal and New York trademark dilution claims would be futile." (internal quotation marks and citations omitted)).

## B.  Alternatively, the Court Should Decline to Exercise Supplemental Jurisdiction Over Count IV, Which Presents Novel and Complex Issues of State Law.

The Court has original subject-matter jurisdiction over Plaintiff's Lanham Act claims, and "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Notably, however, the Court may decline to exercise supplemental jurisdiction if the state claims are novel and complex, or if the federal claims have been dismissed. 28 U.S.C. § 1367(c)(1), (c)(3).

As discussed, no court (state or federal) has squarely decided the issues presented by Plaintiff's Delaware dilution claim. *See Spark Therapeutics*, 2022 WL 605724, at *14 n.12. This has resulted in courts in this District generally analyzing the Delaware anti-dilution statute under

<p style="text-align:center">11</p>

federal law.  *See, e.g.*, *HomeVestors*, 2023 WL 6880341, at *6 ("[Plaintiff] admits that case law regarding 6 Del. C. § 3313 is 'sparse,' and suggests that I may analyze the state dilution claims together with the federal dilution claim.").  For the reasons identified in this motion, Defendant urges the Court to resolve these issues consistent with the federal trademark dilution standard, which is itself consistent with "other states' interpretations of similar language, and the Restatement's view of the level of distinctiveness required under state anti-dilution laws."  *See Spark Therapeutics*, 2022 WL 605724, at *17 (acknowledging "the paucity of authority under Delaware law").

If there remains serious doubt as to how these questions of Delaware law should be resolved, however, the Court should decline to exercise supplemental jurisdiction over Count IV, particularly given that Plaintiff dismissed its federal dilution claim.  *See Santora v. Red Clay Consol. Sch. Dist.*, 901 F. Supp. 2d 482, 493 n.9 (D. Del. 2012) (counseling against the exercise of supplemental jurisdiction where "[t]here is a lack of Delaware case law" to rely on).  Because Plaintiff's Delaware dilution claim presents novel and complex issues, and because Plaintiff dismissed its federal dilution claim, the Court may decline to exercise supplemental jurisdiction over Count IV of the FAC, pursuant to 28 U.S.C. § 1367(c)(1) and (c)(3).

## VI.    CONCLUSION

The Court should dismiss Count IV of the FAC pursuant to Rule 12(b)(6) because Plaintiff fails to allege that the Asserted Mark has achieved the requisite distinctiveness—i.e., actual and widespread recognition among the general consuming public—to assert a claim for dilution under 6 Del. C. § 3313.  Alternatively, the Court may decline to exercise supplemental jurisdiction over Count IV, pursuant to 28 U.S.C. § 1367(c)(1) and (c)(3), because it presents unsettled issues of Delaware state law.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____

Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE   19899-1347
(302) 658-9200
began@morrisnichols.com

OF COUNSEL:

Zachary M. Briers
Adam W. Kwon
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
(213) 683-9100

October 31, 2024

*Attorneys for Defendant*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 31, 2024, upon the following in the manner indicated:

Neal C. Belgam, Esquire                                    *VIA ELECTRONIC MAIL*
Daniel A. Taylor, Esquire
SMITH KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE  19801
*Attorneys for Plaintiff*

Myron Greenspan, Esquire                                 *VIA ELECTRONIC MAIL*
Robert Golden, Esquire
Cathy Shore Sirotin, Esquire
NOLTE LACKENBACH SIEGEL
111 Brook Street, Suite 101
Scarsdale, NY  10583
*Attorneys for Plaintiff*


                                            */s/ Brian P. Egan*
                                            _____
                                            Brian P. Egan (#6227)