## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ORCHARD YARN AND THREAD
COMPANY INC.,

       Plaintiff,

   v.

LAST BRAND INC.,

       Defendant.

C.A. No. 24-805-GBW

### PLAINTIFF ORCHARD YARN AND THREAD COMPANY INC.'S ANSWERING BRIEF IN OPPOSITION TO (D.I. 17) DEFENDANT'S PARTIAL MOTION TO DISMISS

**SMITH KATZENSTEIN & JENKINS LLP**

*Of Counsel:*

Myron Greenspan
Robert B. Golden
Cathy E. Shore Sirotin
NOLTE LACKENBACH SIEGEL
111 Brook Street, Suite 101
Scarsdale, NY 10583
O: 866-201-2030 ext, 139
D: 914-723-4668
mgreenspan@nls.law
rgolden@nls.law
cshore@nls.law

Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Attorneys for Plaintiff Orchard Yarn and Thread Company Inc.*

Dated: November 14, 2024

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. iii

I.      Nature and Stage of The Proceedings ................................................................. 1

II.     Summary of Argument ....................................................................................... 1

III.    Statement of Facts .............................................................................................. 3

IV.     Argument ........................................................................................................... 4

        A.      Count IV States a Claim Under the Delaware Trademark Act. ............................ 4

                1.      Likelihood of injury to business reputation. ............................... 4

                2.      Dilution of the distinctive quality of a mark. ............................. 5

        B.      Defendant's Treatise on What It Thinks the Law Should Be Is Not a
                Suitable Basis for Dismissing Claims On A Rule 12 Motion. ............................... 6

                1.      Defendant inappropriately characterizes the allegations in the FAC
                        in a light most favorable to it. ................................................... 7

                2.      Defendant's representations about Delaware law. ..................... 8

                3.      Defendant's alternative argument. ........................................... 12

        C.      Defendant Ignores the Well-Pleaded Facts and Allegations in the FAC and
                Manufactures "Novel And Complex" Issues Of Delaware Law. ......................... 12

                1.      Defendant selectively chooses the allegations and argues with itself. ...... 13

                2.      The FAC alleges both inherent and acquired distinctiveness. ................. 13

                3.      Defendant does not propose an alternative to *Barnes Group*. ................. 14

        D.      The Court Should Deny Defendant's Request and Exercise Jurisdiction
                Over Count IV. ................................................................................................... 15

V.      Conclusion ........................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**

*Barnes Grp. Inc. v. Connell Ltd. P'ship*,
    793 F. Supp. 1277 (D. Del. 1992) ........................................................... passim

*ComponentOne, L.L.C. v. ComponentArt, Inc.*,
    No. 02: 05CV1122, 2007 WL 4302108 (W.D. Pa. Dec. 6, 2007) ..................................... 7, 8

*F.C.C. v. Pacifica Found.*,
    438 U.S. 726 (1978) ................................................................................. 4

*HomeVestors of Am., Inc. v. Warner Bros. Discovery*,
    No. CV 22-1583-RGA, 2023 WL 6880341 (D. Del. Oct. 18, 2023) ........................... 10, 16

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
    875 F.2d 1026 (2d Cir. 1989) ................................................................. 5, 12

*Mil. Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*,
    251 F. Supp. 3d 750, 757 (D. Del. 2017) ....................................................... 6

*New Balance Athletics, Inc. v. USA New Bunren Int'l Co. Ltd. LLC*,
    424 F. Supp. 3d 334 (D. Del. 2019) ........................................................... 14

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ............................................................ 2, 5, 12, 13

*S&P Glob. Inc. v. S&P Data LLC*,
    619 F. Supp. 3d 445 (D. Del. 2022) ...................................................... passim

*Sanofi-Aventis v. Advancis Pharm. Corp.*,
    453 F. Supp. 2d 834 (D. Del. 2006) ........................................................6, 11

*Spark Therapeutics, Inc. v. Bluebird Bio, Inc.*,
    No. CV 21-00705-WCB, 2022 WL 605724 (D. Del. Jan. 25, 2022) ................... 2, 9, 14, 16

*Treasury Mgmt. Servs., Inc. v. Wall St. Sys. Delaware, Inc.*,
    No. CV 16-283-SLR, 2017 WL 1821114 (D. Del. May 5, 2017) .............................. 1, 6, 14

**Statutes**

28 U.S.C. § 1367(c) ...................................................................................... 15

54 Pa. Stat. and Cons. Stat. Ann. § 1124 (1998) ................................................... 8

6 *Del. C.* § 3313 ........................................................................................ 4

60 Del. Laws, ch. 612, § 1 (1976)........................................................................... 4

FEDERAL TRADEMARK DILUTION ACT OF 1995, PL 104–98, January 16, 1996,
    109 Stat 985............................................................................................................ 8

**Other Authorities**

House Report 104-374 (Nov. 30, 1995)...................................................................... 7

**Treatises**

3 McCarthy on Trademarks and Unfair Competition (5th ed.) ("McCarthy") .............8, 10, 11, 12

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Orchard Yarn and Thread Company Inc. d/b/a Lion Brand Yarn Company Corporation ("Orchard" or "Plaintiff") opposes Defendant Last Brand, Inc.'s ("Last Brand" or "Defendant") partial motion to dismiss Count IV of the First Amended Complaint ("FAC"). (D.I. 17; D.I. 18[1]).

## II.    SUMMARY OF ARGUMENT

1.    The FAC states a claim under the Delaware Trademark Act.  First, it is uncontroverted that the FAC states a claim for "likelihood of injury to business reputation" under the first prong of the statute.  Second, the FAC states a Section 3313 dilution claim under the second prong of the statute, applying the standard articulated in *Barnes Grp. Inc. v. Connell Ltd. P'ship*, 793 F. Supp. 1277, 1303–04 (D. Del. 1992) and followed by other courts in this district on a motion to dismiss, *e.g.*, *Treasury Mgmt. Servs., Inc. v. Wall St. Sys. Delaware, Inc.*, No. CV 16-283-SLR, 2017 WL 1821114, at *5 (D. Del. May 5, 2017)  and after a bench trial, *e.g.*, *S&P Glob. Inc. v. S&P Data LLC*, 619 F. Supp. 3d 445, 468 (D. Del. 2022).

2.    Since *Barnes Group* does not reach Defendant's desired outcome, Defendant simply ignores this precedent (D.I. 18 at ii–iii), and instead urges the Court to read the federal dilution law's requirement of "fame" into the Delaware statute and apply the federal common law construct of "niche market" fame.  This bootstrapping is not based upon the text of the Delaware statute and/or applicable Delaware law.  In support, Defendant wrongly claims that this

---

[1] Defendant's Opening Brief contains citations to an earlier brief (D.I. 13) filed in support of a different motion to dismiss (D.I. 12).  Plaintiff requests that the Court decline to consider these references as violating Federal Rule of Civil Procedure 7(b) (requiring a motion to "state with particularity the grounds for seeking the order") and D. Del. LR 7.1.2 (requiring the grounds in support to accompany the motion in "either a supporting brief or a memorandum of points and authorities"), and circumventing page limits, *id.* 7.1.3(a)(4) (setting page limits for opening briefs).

court adjudicates Section 3313 dilution claims *under the same standard* that applies to federal

dilution claims, even though the single cited case does not support that proposition.  Defendant

also wrongly asserts that Section 3313 of the 1976 Delaware Trademark Act is specifically

"modeled after the [1995] federal corollary" (D.I. 18 at 6), even though this is logically

impossible.  The remainder of Defendant's argument is a conclusory recitation of nonbinding

authority from other states and secondary sources.  None of these materials presents a basis

under Delaware law for dismissal.  And the only Delaware case cited by Defendant that discusses

state dilution laws, did so not on a motion to dismiss but with respect to a preliminary injunction

and assumed—without deciding the issue—that the mark was distinctive for the purposes of the

motion.  *Spark Therapeutics, Inc. v. Bluebird Bio, Inc.*, No. CV 21-00705-WCB, 2022 WL

605724, at \*17 (D. Del. Jan. 25, 2022).

> 3.      Defendant's argument that the FAC does not plead "commercial distinctiveness"

is based upon a reading of the allegations in the FAC in a light most favorable to Defendant.  It is

otherwise an attempt to manufacture what Defendant contends are "novel and complex" issues of

Delaware law.  The FAC alleges that Plaintiff's marks are inherently distinctive, well-known and

associated with Plaintiff's goods.  (D.I.  15 at ¶¶ 7–17, 60–61).  This is the standard this court

applied in *Barnes Group* and in subsequent cases.  It remains good law in Delaware.  Moreover,

the law requires accepting all factual allegations as true and construing the FAC in the light most

favorable to the Plaintiff as the law requires, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d

Cir. 2008),

> 4.      The Court should continue to exercise supplemental jurisdiction and deny

Defendant's motion.  As discussed above, the purported "novel and complex" issues of Delaware

law, which could be a basis for the Court to decline jurisdiction under 28 U.S.C. § 1367(c)(1),

are based on reading the FAC in the light most favorable to Defendant and crediting Defendant's unsupported attorney argument to the exclusion of the well-pleaded factual allegations in the FAC. This is an incorrect application of the law at this stage of the proceedings. Also, Defendant posits that the Court decline jurisdiction on the basis of a "squarely decided" standard that Defendant creates out of whole cloth and does not support with applicable case law.

## III.    STATEMENT OF FACTS

Plaintiff sells high-quality yarn under the marks QUINCE&CO. and also QUINCE. (D.I. 15 at ¶ 16). With use dating to January 2010, Plaintiff is the owner by assignment of the mark QUINCE&CO. which holds Registration No. 6,734,957 on the principal register for "Downloadable image files containing patterns and instructions for knitting" in IC 9, "Printed patterns and instruction sheets for knitting" in IC 16, and "Yarn; Knitting Yarn; Wool Yarn; Alpaca Yarn; Mohair Yarn; Merino Wool Yarn; Cotton yarn; Hemp yarn; Silk Yarn; Natural fiber Yarn" in IC 23. (*Id.* at ¶ 11). Plaintiff also alleges that it has acquired common law rights to the mark QUINCE as well as QUINCE&CO. (*Id.* at ¶ 12).

The FAC alleges that Plaintiffs QUINCE&CO. and QUINCE marks have become well-known and associated with high quality yarns used to create a wide variety of items including sweaters, scarves, blanket, bags, booties, cardigans, and so forth. (*Id.* at ¶ 16). It also alleges that Plaintiff's marks have become well known among the relevant consuming public for high quality yarns, patterns for using its yarns to create a wide range of items of clothing and other items that can and are created by knitting and crocheting. (*Id.* at ¶ 17).

The FAC alleges that Defendant has been using the mark QUINCE in commerce since 2020 and that Defendant has been using as a mark for online retail services selling clothing, housewares, and other goods. (*Id.* at ¶¶ 18–21). The FAC also alleges that since Defendant has been using QUINCE for clothing, Plaintiff has experienced numerous instances of actual

consumer confusion, and further confusion is likely. (*Id.* at ¶¶ 25, 34-37). The FAC alleges

trademark dilution and injury to business reputation under 6 *Del. C.* § 3313. (*Id.* at ¶¶ 60-64).

IV.    **ARGUMENT**

      A.    **Count IV States a Claim Under the Delaware Trademark Act.**

      Under the standard first articulated in *Barnes Grp. Inc. v. Connell Ltd. P'ship*, 793 F.

Supp. 1277, 1303–04 (D. Del. 1992), Count IV of the First Amended Complaint states a claim

under § 3313 of the Delaware Trademark Act, 60 Del. Laws, ch. 612, § 1 (1976). The 1976 Act

states in relevant part:

> Likelihood of injury to business reputation or of dilution of the
> distinctive quality of a mark registered under this chapter, or a
> mark valid at common law or a trade name valid at common law,
> shall be a ground for injunctive relief notwithstanding the absence
> of competition between the parties, or the absence of confusion as
> to the source of goods or services.

6 *Del. C.* § 3313. The plain language of the statute offers injunctive relief on two separate

grounds: "[i] Likelihood of injury to business reputation **or** [ii] of dilution of the distinctive

quality of a mark . . ." *Id.* (emphasis added). The disjunctive conjunction "or" indicates that

"each has a separate meaning[,]" *F.C.C. v. Pacifica Found.*, 438 U.S. 726, 739–40 (1978), and

either violates the statute. As such, under the Delaware Trademark Act, a plaintiff may plead

"likelihood of injury to business reputation" or "likelihood . . . of dilution of the distinctive

quality of a mark." Here, the FAC pleads both.

      1.    **Likelihood of injury to business reputation.**

      The FAC pleads a likelihood of injury to business reputation under the first prong of the

statute. (D.I. 15 at ¶¶ 41, 60, 63–64). It is uncontroverted that Plaintiff has pleaded facts

sufficient to establish likelihood of injury to business reputation, as Defendant's motion does not

address this prong. (D.I. 18 at 4–11). As a result, Defendant has waived its argument against

dismissal of Count IV as to "likelihood of injury to business reputation."  Plaintiff has therefore pleaded a valid claim under this first prong of Section 3313 of the Delaware Trademark Act, and Defendant's motion should be denied for at least this reason.

### 2. Dilution of the distinctive quality of a mark.

The FAC also pleads likelihood of dilution of the distinctive quality of its marks.  This court has addressed the standard to apply to dilution claims under the Delaware Trademark Act. "A finding of dilution . . . , requires that plaintiff's mark possess a distinctive quality capable of dilution and that plaintiff show a likelihood of dilution." *Barnes Group*, 793 F. Supp. at 1303–04 (citing *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir. 1989)) (applying New York law).  Distinctiveness may be inherent or may be acquired through secondary meaning.  *See S&P Global*, 619 F. Supp. 3d 445, 468 (D. Del. 2022) ("Plaintiffs' marks are inherently distinctive, and thus qualify for protection under the Delaware Antidilution Statute."), *Barnes Group*, 793 F. Supp. 1304 (finding that the marks were distinctive and had acquired secondary meaning).  As to likelihood of dilution, "some mental association between the marks is necessary for a dilution claim.  It is this association that may blur the distinctiveness of plaintiff's marks." *Barnes Group*, 793 F. Supp. 1304.

Here, accepting all factual allegations as true and construing the FAC in the light most favorable to the Plaintiff as required, *Phillips*, 515 F.3d at 233, the FAC alleges that Plaintiff's marks are inherently distinctive, well-known and associated with Plaintiff's goods.  (D.I. 15 at ¶¶ 7–17, 60–61); *S&P Global*, 619 F. Supp. 3d at 468, *Barnes Group*, 793 F. Supp. at 1304.  The FAC also alleges both likelihood of confusion and actual confusion.  (D.I. 15 at ¶¶ 34–36, 41, 49–50, 54, 57–58, 64).  The FAC further alleges that "[r]easonable consumers draw a mental association between Plaintiff's use of Plaintiff's QUINCE Marks and Defendant's use of Defendant's QUINCE Mark."  (*Id.* at ¶ 62); *S&P Global*, 619 F. Supp. 3d at 469 ("Weighing the

evidence, it seems likely that there is mental association between Plaintiffs' and Defendants' marks"). Since the FAC alleges facts supporting distinctiveness, likelihood of confusion, and likelihood of dilution, including a mental association between Plaintiff's and Defendant's marks, it therefore states a claim for dilution under the Delaware Trademark Act. *See* *Treasury Management*, 2017 WL 1821114, at *5 (denying motion to dismiss Delaware dilution claim), *Mil. Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F. Supp. 3d 750, 757 (D. Del. 2017) (denying motion to dismiss Delaware dilution claim, because the "plaintiffs have alleged facts sufficient to support secondary meaning[.]"); *see also* *S&P Global*, 619 F. Supp. 3d at 469 ("Plaintiffs have shown dilution by blurring under the Delaware Antidilution Statute."), *Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834, 855 (D. Del. 2006) (finding dilution under the Delaware statute, because the mark is inherently distinctive and consumers draw a mental association between the competing marks). Since the FAC pleads a cause of action for dilution under the second prong of the Delaware statute, Defendant's motion should be denied on this ground as well.

> **B.      Defendant's Treatise on What It Thinks the Law Should Be Is Not a Suitable Basis for Dismissing Claims On A Rule 12 Motion.**

Defendant ignores *Barnes Group* and related case law discussed above in Section IV.A.2 and argues that this Court should apply a federal common law principle, rejecting "niche recognition," to the Delaware statute. (D.I. 18 at 5–8). This argument is based on misrepresentations of and/or conclusory citations to nonbinding authority and inappropriately reads the FAC in a light most favorable to Defendant and not the Plaintiff as required on a motion to dismiss. These are not legitimate reasons to dismiss a claim at the pleading stage.

**1.    Defendant inappropriately characterizes the allegations in the FAC in a light most favorable to it.**

Defendant rewrites the allegations in the FAC and adds characterizations that an "exceptionally narrow market" is at issue.  (D.I. 18 at 8 (citing D.I. 15 at ¶ 17))  Not only is this "exceptionally narrow" language not in the pleadings, but it conveniently ignores other allegations in the FAC such as that Plaintiff's marks "have become well-known and associated with high quality yarns used to create a wide variety of items including sweaters, scarves, blanket, bags, booties, cardigans" and so forth.  (D.I. 15 at ¶ 16).  As a matter of Delaware law, Plaintiff disagrees that the federal common law principle of "niche market" recognition applies to the allegations in the FAC.

Moreover, Defendant's rewriting of the FAC is a blatant attempt to read federal common law interpreting a 1995 federal statute into a Delaware statute that predates that statute by more than two decades.  *E.g.*, *ComponentOne, L.L.C. v. ComponentArt, Inc.*, No. 02: 05CV1122, 2007 WL 4302108, at *3 (W.D. Pa. Dec. 6, 2007) (recognizing that "'niche market fame' . . . is a creature of judicial construction of federal law.").  Essentially, "niche market fame" exists, because the federal dilution statute requires that a mark be famous.  The Delaware dilution statute is not limited to "famous" marks.  As a result, the federal common law principle of niche market fame cannot apply to it. Additionally, the FAC does not contain a federal dilution claim. Therefore, it is inappropriate to read federal common law into the FAC's allegations.

To read the federal dilution statute and associated federal common law as limiting the scope of Delaware law to "famous" marks only would essentially preempt it, an outcome that Congress never intended when it enacted the federal statute.  *E.g.*, House Report 104-374 (Nov. 30, 1995) ("This bill would not preempt state dilution laws.").  Even Professor McCarthy agrees that federal dilution statutes should not preempt state dilution laws.  § 24:80. Federal preemption

of state antidilution law, 3 McCarthy on Trademarks and Unfair Competition § 24:80 (5th ed.)

("McCarthy") ("Both the 1996 FTDA and the 2006 TDRA add to and do not replace or preempt

state antidilution laws.").

2.      **Defendant's representations about Delaware law.**

As discussed below, Defendant misrepresents the nature of Delaware dilution law when it

asserts that Section 3313 is "modeled after" the federal dilution standard and Section 3313

claims are evaluated "under the same standard" that applies to the federal statute.  (D.I. 18 at 5–

6).

a.      **The Delaware Trademark Act predates the federal statute, cannot be "modeled" after it, and does not require a mark to be famous.**

First, Defendant argues that "[b]ecause state anti-dilution statutes **(including**

**Delaware's) are modeled after the federal corollary**, courts have eliminated 'niche' fame or

distinctiveness as a viable theory for establishing a dilution claim under state law."  (D.I. 18 at 6

(emphasis added) (citing *ComponentOne*, 2007 WL 4302108, at *3)).  This is wrong.  The

Delaware Trademark Act, including Section 3313, was enacted in 1976 and has not been

amended.  Dilution only became a part of federal trademark law in 1996.  FEDERAL

TRADEMARK DILUTION ACT OF 1995, PL 104–98, January 16, 1996, 109 Stat 985.

Therefore, it is impossible for any portion of Section 3313 to be "modeled after the federal

corollary."

In contrast, the *ComponentOne* court addressed a Pennsylvania dilution statute that had

been amended after the federal statute to limit recovery to marks "famous in this

Commonwealth[.]"  54 Pa. Stat. and Cons. Stat. Ann. § 1124 (1998).  Notably, unlike the laws of

Pennsylvania and other states, the Delaware dilution statute was not amended to conform with

the changes made to federal dilution law.  In this context, Defendant's representation is

misleading for two reasons.  First, Delaware's law is obviously not modeled after a federal statute enacted nearly two decades later.  Second, Defendant's statement suggests that, like Pennsylvania, Delaware has amended its statute, which is has not.

Here, the plain text of the Delaware statute does not require a mark to be famous, and there is no Delaware case law that imposes a "famous mark" requirement on plaintiffs.  As discussed above, there are a number of Delaware cases applying the *Barnes Group* standard to state dilution claims.  *See supra* Section IV.A.2.  This remains good law.

Defendant instead cites, without any analysis, cases discussing Massachusetts and New York law, where courts in those states have decided to allow federal law to preempt state dilution law and/or to require that a mark be famous.  (D.I. 18 at 6–7).  Defendant also cites, without explanation or discussion, to a comment from the Restatement discussing the level of distinctiveness required for a dilution claim (*id.*), but this quote does not specifically address Defendant's "fame" argument.  Moreover, on the subject of distinctiveness, Judge Bryson has observed that there are nine (9) states with statutes similar to Delaware, and **only four (4) of those states** (including Massachusetts and New York) require a heightened level of distinctiveness under their respective dilution statues.  *Spark Therapeutics*, 2022 WL 605724, at *16 (D. Del. Jan. 25, 2022).  Since "fame" is at least a heightened level of distinctiveness, as it relates to the case at bar, it is reasonable to infer that the other five (5) (including Delaware) do not require a heightened level of distinctiveness, let alone "fame."

     b.  **Defendant's citation to *HomeVestors* is misleading, because the court did not make any substantive recommendations about Delaware's dilution statute.**

Second, Defendant argues that "at least one court in this District has adjudicated a Delaware dilution claim **under the same standard** that applies to federal dilution claims." (D.I. 18 at 5 (emphasis added) (citing *HomeVestors of Am., Inc. v. Warner Bros. Discovery*, No.

CV 22-1583-RGA, 2023 WL 6880341, at *6 (D. Del. Oct. 18, 2023), *report and recommendation adopted,* No. CV 22-1583-RGA, 2023 WL 8826729 (D. Del. Dec. 21, 2023)). This is misleading.  In *HomeVestors*, the defendant moved to dismiss on First Amendment grounds, arguing that "its use of [plaintiff]'s mark is 'noncommercial'" and suggesting that the court "may analyze the state dilution claims together with the federal dilution claim." *HomeVestors*, 2023 WL 6880341, at *6.  Judge Hatcher recommended denial of the motion as to the state dilution claim:  "[i]f [defendant] is correct, then its motion to dismiss the state law dilution claims fail for the same reasons as its motions to dismiss the federal dilution claim.  That is, I do not find that [plaintiff]'s claims are barred by the First Amendment[.]" *Id.*  Defendant's citation is irrelevant to the case at bar, because the *HomeVestors* court did not substantively evaluate either dilution claim, let alone recommend that the district court hold that the standard for federal dilution apply to state law.[2]

> c.    **Defendant's citation to McCarthy omits mention of McCarthy's own "mental association" test for dilution associated with noncompetitive goods discussed in *Mead Data Center* and followed by this court in *Barnes Group*.**

Defendant cites Professor McCarthy's opinions on federal antidilution law related to infringement by use of marks on noncompetitive goods[3] as a "rationale for precluding dilution claims based upon niche notoriety[.]"  (D.I. 18 at 7–8 (quoting McCarthy § 24:105. Niche fame: marks famous to a small segment) (citation omitted)).  Even though this quotation is in a chapter discussing noncompetitive goods, it contemplates a very specific scenario in which a party is "using the antidilution law when the parties are selling their products **in the same niche**

---

[2] The FAC does not allege federal dilution, and Plaintiff does not discuss Defendant's irrelevant citations to federal dilution cases.  (D.I. 18 at 5-6).

[3] Chapter 24 of McCarthy is entitled "Infringement by Use of Mark on Noncompetitive Goods or Services."

**market**[.]" McCarthy § 24:105 (emphasis added). In this circumstance, Professor McCarthy opines that using a state antidilution law "sounds a dissonant and false note[,]" because the antidilution law is a "super weapon" that is used to "resolve what appears to be a garden variety infringement case[.]" *Id*. (quotation marks omitted).

This is a policy opinion that is inapplicable for at least the following reasons. First, the Delaware dilution statute does not require a mark to be famous, so the discussion about the adequacy of niche market fame is irrelevant. Second, Professor McCarthy's opinion is solely limited to the scenario of direct competitors in a niche market. He does not contemplate allegations of dilution with respect to goods in related and complementary markets such as those alleged in the FAC.[4] Third, while Defendant argues that McCarthy's opinion here should apply at the pleading stage, there is nothing to suggest that McCarthy intended for courts to rely on his opinion to dismiss state dilution claims on the pleadings as opposed to addressing them on a developed record as this court has. *See S&P Global*, 619 F. Supp. 3d at 466-69 (addressing Delaware dilution and injunctive relief after a hearing), *Sanofi-Aventis*, 453 F. Supp. 2d at 855 (reviewing Delaware dilution after a bench trial), *Barnes Group*, 793 F. Supp. at 1304 (finding dilution as a matter of Delaware law after a trial).

Also of note to the application of dilution claims against noncompetitive goods, the long blockquote omits a sentence (D.I. 18 at 7) that cites to the mental association test followed by this court in *Barnes Group*. The "missing" sentence states: "[f]or example, the most popular list of offending examples against which antidilution laws are directed is: Dupont shoes, Buick

---

[4] Moreover, Professor McCarthy does not reconcile his opinion here with statements elsewhere in his treatise that the federal dilution statute should not preempt state law and referring to courts as "mavericks" for preempting state dilution statutes in favor of uniformity under the Lanham Act. McCarthy § 24:80. Federal preemption of state antidilution law.

aspirin, Schlitz varnish, Kodak pianos and Bulova gowns." *McCarthy § 24:105* (citing *Mead Data Center*, 875 F.2d at 1031). As discussed above in Section IV.A.2, the case McCarthy cites, *Mead Data Center*, articulates a test for mental association between plaintiff's and defendant's marks as a way to exclude potentially noncompetitive goods from dilution claims—this court has applied that test to Section 3313 claims. *S&P Global*, 619 F. Supp. 3d at 469, *Barnes Group*, 793 F. Supp. 1304 (citations omitted).

### 3.  Defendant's alternative argument.

Ironically, Defendant also argues that "[e]ven accepting the allegations [in the FAC] as true," the Delaware dilution claim should be dismissed. (D.I. 18 at 8). This is ironic, because this alternative argument follows the standard that should have applied all along. *Phillips*, 515 F.3d at 233. However, it first appears eight pages into the opening brief, at the end of its first argument. Also, the conclusory citation to *Savin Corp.* is irrelevant, because it focuses on federal dilution, which for the reasons discussed was enacted decades *after* the Delaware statute and was not intended to preempt it.

### C.  Defendant Ignores the Well-Pleaded Facts and Allegations in the FAC and Manufactures "Novel And Complex" Issues Of Delaware Law.

Defendant's "commercial distinctiveness" argument is a straw man that ignores the well-pleaded allegations in the FAC and turns the motion into an irrelevant policy discussion. (D.I. 18 at 8–11). On this motion to dismiss, the burden is on Defendant to articulate pleading standards supported by statute and/or case law and to demonstrate why the allegations in the complaint do not satisfy those standards. It has not done that. Instead, Defendant has chosen to selectively misread the FAC so that it presents a self-serving "novel and complex issue of state law." (*Id.*). Defendant engages in a hypothetical argument with itself. (*Id.*). These arguments are not supported by the allegations in the FAC.

12

1. **Defendant selectively chooses the allegations and argues with itself.**

Defendant selectively reads the FAC in a light most favorable to it, despite the prohibition on doing so. *Phillips*, 515 F.3d at 233. Specifically, Defendant fixates on the allegation in the FAC that Plaintiff's marks are arbitrary and are "therefore, inherently distinctive" and argues that the FAC's allegations in support of distinctiveness are limited to this single allegation. (*Id.* at 8 (citing D.I. 15 at ¶ 61))[5]. Defendant then concludes that "[n]o Delaware court has squarely decided whether the 'distinctive' requirement imposed by Delaware's anti-dilution law could be met by a showing of conceptual distinctiveness alone, **absent an additional showing of commercial distinctiveness**." (*Id.* at 9 (emphasis added)). Defendant then engages in a theoretical policy discussion unsupported by case law. (*Id.* at 9–11). This is incorrect. Plaintiff's allegations are not limited as Defendant contends.

2. **The FAC alleges both inherent and acquired distinctiveness.**

As discussed above in Section IV.A.2, Plaintiff has adequately pleaded distinctiveness. "Proof of distinctiveness necessary to satisfy the antidilution statutes typically is the same proof used to show inherent or acquired distinctiveness for infringement purposes under the Lanham Act." *Barnes Group*, 793 F. Supp. at 1304 (citation omitted). In *Barnes Group*, for example, this court held a 7-day trial, concluded that plaintiff's marks were distinctive and had acquired secondary meaning, and found dilution under Section 3313. *Id.* Here, accepting all factual allegations as true and construing the FAC in the light most favorable to the Plaintiff, *Phillips*, 515 F.3d at 233, the FAC alleges that Plaintiff's marks are inherently distinctive, well-known and associated with Plaintiff's goods. (D.I. 15 at ¶¶ 7–17, 60–61). In comparison with the

---

[5] Elsewhere in the opening brief, Defendant admits, for example, that paragraph 17 of the FAC makes allegations related to distinctiveness, (D.I. 18 at 4, 8 (citing D.I. 15 at ¶ 17)), but it conveniently ignores the allegations in paragraphs 16-17 for the purpose of its argument here.

standards applied at later stages of a case, Delaware courts apply a different standard for dilution on a motion to dismiss. *E.g.*, *Treasury Management*, 2017 WL 1821114, at *5 (accepting distinctiveness and likelihood of confusion at the pleading stage for a Delaware dilution claim); *contra New Balance Athletics, Inc. v. USA New Bunren Int'l Co. Ltd. LLC*, 424 F. Supp. 3d 334, 353 (D. Del. 2019) (denying summary judgment as to a Delaware dilution claim based upon case law from a motion to dismiss, because "the standard to survive a motion to dismiss is not the same as the standard to win on summary judgment."). Regardless of what Plaintiff will be required to show at trial, the well-pleaded allegations in the FAC address at least the standard articulated in *Barnes Group*.[6]

### 3. Defendant does not propose an alternative to *Barnes Group*.

As with its "niche market" argument, Defendant does not cite any authority articulating what it means by "commercial distinctiveness" as a required pleading standard as a matter of Delaware law. (D.I. 18 at 8–11.) Instead, Defendant cites to secondary sources and to a case in this court in which Judge Bryson discussed the standard for distinctiveness under Section 3313 in detail but ultimately did not decide on the standard to apply and "assume[d] without deciding that [plaintiff]'s marks are sufficiently distinctive to qualify for protection under the Delaware anti-dilution statute." *Spark Therapeutics*, 2022 WL 605724, at *17. Nonetheless, Defendant does not discuss *Barnes Group* and related cases, nor does it articulate a different pleading standard against which it contends the FAC should be measured. On this basis, the motion should be denied.

---

[6] Should the Court determine that *Barnes Group* is no longer good law or that another standard applies, Plaintiff respectfully requests leave to amend.

**D.    The Court Should Deny Defendant's Request and Exercise Jurisdiction Over Count IV.**

The Court should continue to exercise jurisdiction over Count IV, the Delaware dilution claim, and deny Defendant's motion.  (D.I. 18 at 11-12).  District courts may decline to exercise supplemental jurisdiction over state law claims for one of four reasons, the one alleged here by Defendant is if "the claim raises a novel or complex issue of State law[.]"  28 U.S.C. § 1367(c); (*see also* D.I. 18 at 11).

However, Defendant, without citation or support, contorts this reason and, in effect, argues that the Court should apply *a different standard*.  Defendant contends that since "no court (state or federal) has squarely decided the issues presented" in Count IV of the FAC (D.I. 18 at 11), the Court should decline jurisdiction.  This is clearly the wrong standard to apply, because courts rarely address cases in which another court has already "squarely decided the issues presented."  And parties rarely raise and/or contest issues that have already been "squarely decided."  By this logic a federal court could decline to exercise jurisdiction over just about any claim based upon the uniqueness of the facts, the procedural posture, and the legal issues presented, not just—as Defendant purports to argue here—claims that raise novel and complex issues of State law.  28 U.S.C. § 1367(c).

Furthermore, here the "novel and complex" issues are manufactured by Defendant and are not raised by the FAC.  As discussed above, Section 3313 does not require a mark to be famous, and the Delaware legislature has not amended the statute in the nearly three decades since the federal dilution statute was passed.  Therefore, "niche market" fame is not an aspect of Delaware law.  And as to distinctiveness, the allegedly "novel and complex" issue argued by Defendant does not correspond to the allegations in the FAC, which follow existing Delaware case law.

Defendant's cited case law does not command a different result.  Defendant again conveniently misquotes *HomeVestors* as "**[Plaintiff]** admits that case law . . . is 'sparse[,]'" (D.I. 18 at 12 (emphasis added) (quoting *HomeVestors*, 2023 WL 6880341, at *6)), which suggests that a party asserting a Section 3313 claim asked the court to evaluate its Delaware dilution claim under the narrower and more restrictive federal dilution standard, and to read federal common law into the Delaware statute, as Defendant advocates here, (*id.*).  In fact, the opposite is true.  In *HomeVestors*, that statement was made by the defendant, Warner Brothers Discovery ("WBD"), which was the moving party in that motion to dismiss.  *HomeVestors*, 2023 WL 6880341, at *6.  There, as here, the moving party—not the plaintiff asserting the state dilution claim—asked the court to apply the more restrictive federal standard to the Delaware dilution statute.  Additionally, for the reasons discussed above in Section IV.B.2.b, it is misleading and incorrect to cite *HomeVestors* as exemplifying the proposition that this court "generally analyz[es] the Delaware anti-dilution statute under federal law."  (D.I. 18 at 11–12).  Delaware courts do not "generally analyze" Section 3313 dilution claims under federal law.

With respect to *Spark Therapeutics*, although that case does not contain a holding as to Section 3313, it discusses hypothetical challenges not raised by the FAC in this matter, such as whether Delaware law would support a dilution claim with regard to a suggestive mark.  *Spark Therapeutics*, 2022 WL 605724, at *14 n.12.  In that regard, *Spark Therapeutics* is inapposite, because the FAC alleges an arbitrary mark and other factors previously addressed by Delaware courts.

Since the FAC does not raise any novel issues of Delaware law, it would be inappropriate for the Court to decline to exercise jurisdiction over the state dilution claim.  Moreover, since the other three claims:  two federal and one Delaware deceptive trade practices claim are based on

16

common facts, it would be overly and unduly burdensome on the parties and the courts to decline

jurisdiction over one claim and for litigation to proceed in parallel matters in different courts.

For these reasons, the Court should continue to exercise jurisdiction over Count IV and

deny Defendant's motion.

## V.   CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny

Defendant's Motion.

Dated: November 14, 2024

**SMITH KATZENSTEIN & JENKINS LLP**

*Of Counsel:*

*/s/ Daniel A. Taylor*

Neal C. Belgam (No. 2721)

Myron Greenspan
Robert B. Golden
Cathy E. Shore Sirotin
NOLTE LACKENBACH SIEGEL
111 Brook Street, Suite 101
Scarsdale, NY 10583
O: 866-201-2030 ext, 139
D: 914-723-4668
F: 914-723-4301
mgreenspan@nls.law
rgolden@nls.law
cshore@nls.law

Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Attorneys for Plaintiff Orchard Yarn and
Thread Company Inc.*